No. 25-8011

# UNITED STATES COURT OF APPEALS
# FOR THE FIRST CIRCUIT

## IN RE: TELEXFREE SECURITIES LITIGATION

On Petition for Permission to Appeal from the
United States District Court for the District of Massachusetts,
Case No. 14-md-02566-NMG

## Answer in Opposition by Defendants-Respondents Wells Fargo Bank, Wells Fargo Advisors, ProPay, Mauricio Cardenas, and Michael Montalvo to Plaintiff-Petitioner Anthony Cellucci's Rule 23(f) Petition

John O. Mirick (First Circuit
  Bar No. 15741)
**Mirick, O'Connell,
DeMallie & Lougee, LLP**
100 Front Street
Worcester, MA 01609
(508) 791-8500

Adam K. Doerr (First Circuit
  Bar No. 1216846)
Fitz E. Barringer
Demi L. Bostian
Patrick H. Hill
Emma T. Kutteh
**Robinson, Bradshaw & Hinson,
P.A.**
600 S. Tryon St., Suite 2300
Charlotte, NC 28202
(704) 377-2536

*Counsel for Defendants-Respondents
Wells Fargo Bank, N.A. and Wells Fargo Advisors, LLC*

Douglas S. Brooks (First
    Circuit Bar No. 68296)

**Libby Hoopes Brooks, P.C.**
399 Boylston Street, Suite 600
Boston, Massachusetts 02116
(617) 338-9300

David L. Balser
Phyllis B. Sumner
J. Andrew Pratt
Charles G. Spalding, Jr.
Alexandra H. Titus

**King & Spalding LLP**
1180 Peachtree Street, N.E.
Atlanta, Georgia 30309
(404) 572-4799

*Counsel for Defendant-Respondent ProPay, Inc.*

David B. Chaffin (First Circuit
    Bar No. 13045)
Eric B. Hermanson (First Circuit
    Bar No. 71001)

**White and Williams LLP**
101 Arch Street, Suite 1930
Boston, MA 02110
(617) 748-5200

*Counsel for Defendants-Respondents
Mauricio Cardenas and Michael
Montalvo*

# RULE 26.1 CORPORATE DISCLOSURE STATEMENTS

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure, Defendants-Respondents Wells Fargo Bank, N.A. and Wells Fargo Advisors, a trade name used by Wells Fargo Clearing Services, LLC, state that they are wholly owned subsidiaries of Wells Fargo & Co., a publicly traded corporation organized under the laws of the State of Delaware. No publicly held corporation owns 10% or more of Wells Fargo & Co.'s stock.

Defendant-Respondent ProPay, Inc. states that it is a wholly owned subsidiary of Global Payments Inc., a publicly traded corporation organized under the laws of the State of Georgia. No publicly held corporation owns 10% or more of Global Payments Inc.'s stock.

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES...................................................................iii

ISSUE PRESENTED ...................................................................... 1

INTRODUCTION............................................................................ 1

ARGUMENT .................................................................................. 4

    I.    The Petition fails this Court's test for Rule 23(f) Review. .................................................................................. 4

        A.    Even if the Order effectively ends the litigation, there is nothing questionable about the decision.......... 6

        B.    Plaintiff cannot obtain immediate review by arguing class certification would pressure defendants to settle........................................................ 7

        C.    Plaintiff has not identified important, unsettled legal issues that must be resolved via interlocutory appeal. ...................................................... 8

    II.    The district court correctly determined that individual damages inquiries will predominate. ................................... 10

    III.    The district court correctly determined that individual inquiries regarding choice of law will predominate. ............ 19

    IV.    Granting the petition would serve no purpose because multiple, independent grounds support the denial of class certification................................................................. 23

CONCLUSION ............................................................................... 26

CERTIFICATE OF COMPLIANCE......................................................... 29

CERTIFICATE OF SERVICE.............................................................. 30

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Blair v. Equifax Check Services, Inc.,*
  181 F.3d 832 (7th Cir.1999) .......................................................... 2, 23

*Caruso v. Delta Air Lines, Inc.,*
  113 F.4th 56, 77 (1st Cir. 2024) .................................................... 22

*Cellucci v. Foster Garvey,*
  No. 4:23-10304-TSH, 2023 WL 4627982
  (D. Mass July 19, 2023) ................................................................ 21

*In re Asacol Antitrust Litig.,*
  907 F.3d 42 (1st Cir. 2018) .......................................................... 8, 17

*In re Iatrou,*
  Civil Action No. 20-40112-DPW, 2022 WL 220323
  (D. Mass, Jan. 25, 2022) ............................................................ 15,17

*In re Polymedica Corp. Sec. Litig.,*
  432 F.3d 1 (1st Cir. 2005) ............................................................ 5, 7

*In re TelexFree Sec. Litig.,*
  626 F. Supp. 3d 253 (D. Mass. 2022) ............................................ 20

*In re TelexFree, LLC,*
  941 F.3d 576 (1st Cir. 2019) ...................................................... 13, 14

*Microsoft Corp. v. Baker,*
  582 U.S. 23 (2017) .......................................................................... 8

*Mowbray v. Waste Mgmt. Holdings, Inc.,*
  189 F.R.D. 194 (D. Mass. 1999) .................................................... 10

*Ortiz v. Saba Univ. Sch. of Med.,*
  348 F.R.D. 4 (D. Mass. 2024) ........................................................ 10

*Waste Management Holdings, Inc. v. Mowbray*,
   208 F.3d 288 (2000) .................................................................. passim

**Rule**

Fed. R. Civ. P. 23 ............................................................................. passim

## ISSUE PRESENTED

Whether Plaintiff-Petitioner satisfies this Court's requirements for granting interlocutory review of the district court's April 8, 2025 Memorandum & Order ("Order") under Rule 23(f) when (1) he has not shown the district court's denial of class certification was questionable or even acknowledged his burden to do so, and (2) the district court simply and correctly applied this Court's settled precedent to the facts, without raising any unsettled legal issues.[1]

## INTRODUCTION

In *Waste Management Holdings, Inc. v. Mowbray*, this Court laid out the criteria for deciding whether to exercise its discretion to grant a petition under Rule 23(f). 208 F.3d 288, 292-94 (1st Cir. 2000). Rule 23(f) allows appeals from class certification rulings when: (1) an order denying class certification "effectively ends the case," such as when the named plaintiff's claim is small; (2) when an order granting class certification "raises the stakes of the litigation so substantially that the defendant

---

[1] The correct case name is *In re: TelexFree Securities Litigation*, not *Cellucci v. Wells Fargo Bank et al.* This Answer is being jointly filed by Wells Fargo Bank, Wells Fargo Advisors, ProPay, Mauricio Cardenas, and Michael Montalvo (the "Responding Defendants").

likely will feel irresistible pressure to settle"; or (3) when granting leave to appeal will lead to clarification of a "fundamental issue of law." *Id.* at 293. The Petition should be denied because it does not satisfy any of these requirements.

First, Plaintiff claims the Order "effectively end[s] the case" because his claim "is not of a sufficient magnitude to warrant the costs of stand-alone litigation." Petition at 8. But this is not enough. Plaintiff "must also demonstrate that the district court's ruling on class certification is questionable . . . taking into account the discretion the district judge possesses in implementing Rule 23, and the correspondingly deferential standard of appellate review." *Id.* (quoting *Blair v. Equifax Check Svcs., Inc.*, 181 F.3d 832 (7th Cir.1999) (cleaned up)). Plaintiff has not satisfied or even acknowledged this requirement. His entire argument is that his individual claim is too small to litigate, and his petition "should be granted on this ground alone." Petition at 13. Plaintiff never argues that the decision was "questionable," nor does he address the governing abuse of discretion standard.

Second, Plaintiff argues the Court should grant his Petition because, if the district court *had* granted certification, defendants would

"*certainly* feel irresistible pressure to settle." *Id.* at 14. But this category applies only to defendants attempting to appeal orders granting certification, not plaintiffs seeking to appeal the denial of certification.

Third, Plaintiff argues the Court should grant the Petition to resolve legal issues involving class actions arising from Ponzi/pyramid schemes. Although he devotes most of the Petition to this argument, Plaintiff does not identify any issues of law for the Court to resolve, unsettled or otherwise. Instead, he takes issue with the district court's factual findings and application of settled law to those facts. Because he presents no unsettled legal issue, Plaintiff has not met the requirements for review under this category.

Finally, Plaintiff offers the Court no reason to believe interlocutory review would serve any purpose here. The district court denied class certification for multiple, independent reasons in a carefully reasoned opinion. The Petition provides no indication that the district court erred in this analysis, let alone that it abused its discretion. As this Court has held, "interlocutory appeals are disruptive, time-consuming, and expensive," *Mowbray*, 208 F.3d at 294, and there is no reason to permit them when an appeal would not change the outcome or advance the law.

## ARGUMENT

Plaintiff misstates and misapplies the standard for Rule 23(f) petitions. As a result, the Petition fatally fails to argue that the district court's decision was questionable and mistakenly treats Plaintiff's disagreements with the district court's factual findings as if they raise unsettled issues of law.

To present the Court with a clearer analysis, the Responding Defendants begin by addressing the three *Mowbray* categories (Section I), then respond to Plaintiff's challenges to the district court's analysis on damages (Section II) and choice of law (Section III). Responding Defendants conclude by explaining how an interlocutory appeal serves no purpose when it inevitably would lead to the conclusion that a class cannot be certified for multiple, independent reasons (Section IV).

## I.     The Petition fails this Court's test for Rule 23(f) review.

Although Plaintiff purports to organize the Petition according to the three *Mowbray* categories, he fails to acknowledge the "gloss" the Court applies to them. To satisfy the first two categories, it is not enough to show that the ruling effectively ends the litigation. Plaintiff must also show the decision was "questionable." *Id.* This gloss serves to "restore

equilibrium when a doubtful class certification ruling would virtually compel a party to abandon a potentially meritorious claim or defense," but it does not allow immediate review simply because the individual plaintiff's claim is small or alleged classwide damages are large. *See id.* Moreover, whether the ruling is "questionable" must be evaluated in light of the deferential abuse of discretion standard that would apply on appeal. *Id.* The district court's discretion is especially broad in the case of "fact-dominated" questions like those raised here, which will be reversed only for clear error. *In re Polymedica Corp. Sec. Litig.*, 432 F.3d 1, 4 (1st Cir. 2005).

As for the third category, Plaintiff cannot satisfy it simply by asserting that the district court's decision involves an unsettled legal issue. Because "interlocutory appeals should be the exception, not the rule," this category is restricted to "instances in which an appeal will permit the resolution of an unsettled legal issue that is important to the particular litigation *as well as important in itself* and likely to escape effective review if left hanging until the end of the case." *Mowbray,* 208 F.3d at 294 (emphasis added).

There is nothing questionable about the Order. Moreover, Plaintiff fails to identify any important, unsettled legal issues that must be resolved to help develop the law.

## A. Even if the Order effectively ends the litigation, there is nothing questionable about the decision.

Plaintiff's argument for review under the first *Mowbray* category should be rejected. The Petition fails to even argue that the district court's ruling was "questionable," an additional requirement this Court imposed because "some cases deserve to die and others deserve to settle." *Id.* at 293.

Plaintiff's first Question Presented is "Does the Order denying class action status effectively end the case because named Plaintiff's $21,450 claim is not of a sufficient magnitude to warrant the costs of stand-alone litigation?" Petition at 8. Under "Reasons for Granting the Petition," he says his claim does not warrant individual litigation, and the "Petition should be granted on this ground alone." *Id.* at 13. The Petition does not even contain the word "questionable," let alone show that this requirement is met.

Even if the Court were inclined to treat the Petition as indirectly arguing the Order was questionable, it would still fail. Whether the

district court's decision was questionable must be analyzed in light of the standard of review. *Mowbray*, 208 F.3d at 293. Plaintiff ignores this requirement as well, omitting any mention of the abuse of discretion standard that would apply on appeal.

Plaintiff's failure to acknowledge the applicable standard is especially problematic in light of the factual nature of the challenges he attempts to bring. As discussed in detail below, the district court applied fundamental legal principles employed in countless cases, and it made detailed factual findings based on a well-developed record. Although Plaintiff disagrees with some aspects of that analysis, none of these complaints evidences clear error, as would be required to disturb the district court's factual findings. *See Polymedica*, 432 F.3d at 4. Given the district court's considerable discretion in this area, there is nothing "questionable" here.

### B. Plaintiff cannot obtain immediate review by arguing class certification would pressure defendants to settle.

Plaintiff also urges this Court to grant the Petition because, "if a class is certified, . . . Defendants will *certainly* feel irresistible pressure to settle." Petition at 13-14. This argument invokes the "reverse death knell" category, where a defendant is forced to abandon meritorious

defenses under irresistible settlement pressure. *See Microsoft Corp. v. Baker*, 582 U.S. 23, 29 & n.2 (2017).

There is no "reverse death knell" here because the district court denied certification. Although Plaintiff's argument suggests he hoped the specter of $1.16 billion in (purported) aggregate damages would force defendants to abandon their substantial merits defenses and settle, this is no basis for granting the Petition. Rule 23(f) is not intended to allow plaintiffs to exert irresistible pressure on defendants—this is exactly what the rule seeks to prevent. *See* Fed. R. Civ. P. 23(f) advisory committee's note. This second *Mowbray* category does not apply.

### C. Plaintiff has not identified important, unsettled legal issues that must be resolved via interlocutory appeal.

To satisfy the third category, the ruling must present an "unsettled legal issue that is . . . *important in itself.*" *Mowbray*, 208 F.3d at 294 (emphasis added). In other words, immediate resolution must be necessary to clarify the law outside of the instant litigation, such as when there is a circuit split. *See In re Asacol Antitrust Litig.*, 907 F.3d 42, 47 (1st Cir. 2018). Immediate review is not appropriate when the underlying decision turns on "familiar and almost routine issues." *See Mowbray*, 208 F.3d at 294 (quoting Fed. R. Civ. P. 23(f) advisory committee's note).

Although Plaintiff devotes most of the Petition to this third category, Petition at 14-24, neither of his arguments in this section involves an unsettled issue of law, let alone an "important" issue with implications beyond this case. *Mowbray*, 208 F.3d at 294.

Plaintiff first challenges the finding that individual issues will predominate because many putative class members participated in TelexFree via unverifiable "triangular transactions." Petition at 3-4. But this is a factual issue, not a legal one. *See* Petition at 14-20. The Petition cites no authority that would undermine the conclusion that individual issues regarding injury and damages will overwhelm any common issues. Petition at 14-20. Given the deference afforded trial courts in dealing with questions of case management and administration, it would be especially difficult to overturn the district court's ruling on issues like the feasibility of Plaintiff's proposed process for identifying and excluding uninjured class members. The prevalence of triangular transactions in TelexFree and their implications for the Rule 23 analysis are unique to this litigation, not questions with broad implications for other cases.

Next, Plaintiff argues the district court erred in concluding individual choice of law issues defeat predominance. Again, there is

nothing unsettled about the law underlying this conclusion. Plaintiff does not dispute the long line of authority holding that differences in state law may defeat predominance. *See, e.g., Mowbray v. Waste Mgmt. Holdings, Inc.*, 189 F.R.D. 194, 199 (D. Mass. 1999); *Ortiz v. Saba Univ. Sch. of Med.*, 348 F.R.D. 4, 12 (D. Mass. 2024). Nor does Plaintiff dispute that it was his burden to conduct a rigorous choice of law analysis. *See* Petition at 20-24. As explained below, Plaintiff's criticism of this analysis is misguided and incorrect. But more importantly, Plaintiff has not demonstrated that immediate review is necessary to aid development of the law.

## II. <u>The district court correctly determined that individual damages inquiries will predominate.</u>

Turning to the substance of Plaintiff's first objection to the Order, there was nothing "questionable" or "unsettled" about the conclusion that individual damages issues would predominate given the widespread use of triangular transactions by TelexFree participants. Plaintiff's objection to this conclusion is based almost entirely on his unsupported argument that, as a factual matter, triangular transactions were not prevalent enough to affect the predominance inquiry. In fact, Plaintiff's arguments regarding damages contradict his own judicial admissions and the

findings of every court to examine this particular issue. The district court's holding that individual damages issues will predominate merely applies "familiar and almost routine" legal analysis to those facts, *Mowbray*, 208 F.3d at 294, and its treatment of the evidentiary and practical concerns should receive substantial deference.

The Order correctly analyzed the damages issue, which Plaintiff conceded will have to be determined on an individual basis. *See* Order at 20. Plaintiff tried to avoid and minimize the impact of triangular transactions on the damages analysis, but the district court was not persuaded. As a matter of law and common sense, "[a]n accurate calculation of damages of each class member must still account for triangular transactions to ensure that actual net winners do not benefit from the limited data in the SIG [TelexFree data] system," Order at 14, which Plaintiff admits did not track money paid or received in such transactions, Petition at 16. The fact that TelexFree was a Ponzi/pyramid scheme simply "is not proof that the putative class contains a de minimis number of uninjured class members." Order at 23. The evidence shows that the number of net winners in the putative class would be more than de minimis. Indeed, the United States Trustee in the TelexFree

bankruptcy proceedings (the "Trustee"), who considered triangular transactions in his bankruptcy claims analysis, identified "nearly 100,000 net winners," any of whom could be included within the proposed class here. *See* Order at 22-23.

Plaintiff's arguments to the contrary mischaracterize the record and the Order. For example, the Petition takes exception to the district court's observation that approximately 90% of payments occurred by triangular transactions, claiming the district court "uncritically accepted Defendants' rank speculation that transactions between participants . . . accounted for nearly 90% of all TelexFree transactions." Petition at 16 (cleaned up).

This is false. To support this attack, the Petition quotes the Responding Defendants' brief in opposition to class certification, Petition Ex. 17 (the "Opposition"), and cites three pages of the Order, which it characterizes as "adopting Defendants' formulation." Petition at 16 & n. 29. None of these citations supports the claim that the 90% calculation was the product of "rank speculation" or that the district court "uncritically accepted" this figure.

Start with the Opposition, which the Petition cites as advancing the "nearly 90%" figure at pages 6-7. As the Opposition itself makes clear, this number came from the Trustee's analysis of the TelexFree SIG database. *See* Opposition at 6 (citing the Trustee's Affidavit). The "rank speculation" accusation is misleading, at best.

Now consider the Order, which the Petition cites as "adopting Defendants' formulation" at pages 3, 14, and 27 of the Order. Petition at 16 n. 29. Again, Plaintiff elides an important aspect of the Order to mislead and advance his claim that the district court "uncritically adopted" this number. The Order actually says that "***the First Circuit has estimated*** that almost 90% of new membership fees were paid to recruiters via triangular transactions." Order at 14 (emphasis added) (citing *In re TelexFree, LLC*, 941 F.3d 576, 580 (1st Cir. 2019) (appeal addressing whether Plaintiff's counsel or the Trustee will be allowed to pursue claims against TelexFree net winners)).

Moreover, Plaintiff's counsel themselves adopted the Trustee's 90% calculation long before it appeared in the Opposition or this Court's 2019 opinion. Nearly a decade ago, the Trustee and Plaintiff's counsel began litigating over who could pursue claims against net winners. At summary

judgment before the bankruptcy court, Plaintiff's counsel cited this same figure, from the same source, as an undisputed fact. *See Darr v. Dos Santos*, No. 15-4055, Dkt. 40, at 6 (Bankr. D. Mass) ("near 90%"). Plaintiff's counsel also acknowledged that "[m]ost of the monies extracted from the Victims were extracted by other individual, non-debtor, non-insider Participants." *Id.*[2]

Every court to examine the issue has agreed with the position that Plaintiff's counsel originally took but now seeks to avoid: the vast majority of TelexFree payments involved triangular transactions between participants. Bankruptcy Judge Hoffman, District Judges Hillman and Woodlock, and three members of this Court had all adopted the Trustee's figure by the time of the Order.[3]

---

[2] To the extent Plaintiff now claims some of the triangular transactions may not have involved "dollar-for-dollar" exchanges of cash for credits, Petition at 16, this only underscores the point that there is no way to determine the amounts that participants won or lost in TelexFree without individual analysis.

[3] *See Darr v. Dos Santos*, No. 15-4055, Dkt. 98, at 8 (Hoffman, J.) (finding "approximately 11.7%" of invoices were "paid in cash directly to Telexfree"); *Darr v. Dos Santos*, No. 18-40007, Dkt. 13 (Hillman, J.) (adopting Judge's Hoffman's findings); *In re TelexFree*, 941 F.3d at 580 (First Circuit opinion affirming these rulings and stating that "only about twelve percent of membership fees" were paid directly to TelexFree, and the "much more common method" was triangular transactions); *In re*

At bottom, there is no credible basis to dispute that nearly 90% of all payments into the scheme occurred via triangular transactions. The Trustee calculated this figure using invoice data in the TelexFree SIG system. Petition Ex. 10 at 14, ¶ 35. This is the exact same invoice data Plaintiff's expert used for her damages methodology. Petition Ex. 9 at 9-10.[4] Given that Plaintiff's expert relied on the same data, his objection to the Court's acceptance of the Trustee's calculations rings hollow.

Beyond this, the Petition offers a patchwork of other reasons why Plaintiff disagrees with the district court's damages analysis, but none is persuasive.

---

*Iatrou*, No. 20-40112-DPW, 2022 WL 220323, at *1-2 (D. Mass, Jan. 25, 2022) (Woodlock, J.) (adopting this figure in a bankruptcy appeal).

[4] Plaintiff argues his expert Van Tassel's aggregate damages calculation was "conservative" because she excluded triangular transactions. Responding Defendants disagree. *See* Expert Reply Report of Healey Whitsett (Dkt. 2197-2) at Appx_137, ¶¶ 39-40 (there are two sides to every triangular transaction—one person loses money and one gains money—so it is far from clear that including triangular transactions would increase aggregate damages). Even if this were true, it would not change the conclusion that individualized inquiry is required to determine injury and damages for each class member. The total amount of aggregate damages is irrelevant to those critical, individual-level questions.

*First*, the Petition cites the Kathy Phelps expert report for the proposition that "payments between participants primarily benefitted only the small percentage of participants that were at the top of the pyramid, most of whom were the scheme's perpetrators and other insiders." Petition at 17. The district court considered and rejected this argument. *See* Order at 22-24 (dismissing Plaintiff's assertion that the number of net winners must be small due to the nature of pyramid schemes). Plaintiff cannot claim his expert presented "unchallenged evidence," Petition at 17, when the district court weighed it against the competing evidence submitted by Responding Defendants and found it wanting. Again, this argument contradicts Plaintiff's admission years ago that triangular transactions constituted 90% of payments in the scheme and largely went to non-insider TelexFree participants.

*Second*, Plaintiff complains the district court rejected his plan to use declarations to identify and exclude uninjured net winners from the class during a proposed claims administration process. Order at 17-18. But the district court's finding that this plan was "unworkable" and that "it is unrealistic to assume net winners will self-report their gains and thereby forfeit their (miscalculated) damages" came straight from this

Court's long-standing precedent. *Id.* at 21, 27. In *Asacol*, the Court rejected a proposal to identify and exclude thousands of uninjured class members using declarations because it would violate defendants' constitutional rights. 907 F.3d at 54. The district court simply applied that holding to the facts. Order at 25-26. Indeed, it would have been an abuse of discretion to hold otherwise.

*Third*, the Petition challenges the district court's reliance on the bankruptcy claim process to show the individualized nature of the damages analysis, and specifically the district court's finding that tens of thousands of bankruptcy claims were disallowed. This argument misses the point. Regardless of how many bankruptcy claims were disallowed or why, it is beyond dispute that the Trustee had to review voluminous data and records gathered from individual participants to determine which claimants suffered a loss and verify the amount of each claim. Then, if a claimant disagreed with the Trustee's calculation, they were entitled to an evidentiary hearing. *See Iatrou*, 2022 WL 220323 at *2-6. Any claims administrator would have to undertake this same claim-by-claim analysis, which would result in thousands of mini-trials. *See* Opposition at 42-43. The district court's determination that this process would be

unworkable should be affirmed as well within the district court's discretion and inherent case management authority.

*Fourth*, the Petition claims the district court ignored the previous approval of several settlements with similar class definitions. Petition at 20. As Plaintiff knows, however, each of those settlement orders stated that certification of a settlement class would have no bearing on the decision whether to grant class certification as to non-settling defendants. Petition Ex. 14 at 5, ¶ 16; Ex. 15 at 5, ¶ 16; Ex. 16 at 6, ¶ 16.

*Fifth*, the Petition claims the district court failed to consider proposed exclusions from the class, which were introduced for the first time in documents Plaintiff asked to hand up at the class certification hearing. *See* Petition at 4. In reality, the district court considered and directly addressed these "exclusions" in the Order, noting that they "have no bearing on the decision herein." Order at 7 n.1.

*Finally*, Plaintiff invokes a parade of horribles, arguing the Order will prevent class certification in any future Ponzi or pyramid scheme cases. Petition at 6. On the contrary, the district court recognized and distinguished cases in which courts have granted certification in these contexts. As the Order noted, unlike in TelexFree, those cases involved

reliable and complete data that could be used to calculate each class member's damages. Order at 23. The Order is thoroughly bound up with the specific facts of this case, and it is difficult to see how it would necessarily preclude certification in future cases involving different facts.

In sum, the district court was well within its discretion—and correct—to hold that individual damages issues would predominate. The Petition fails to identify any compelling reason for immediate appellate review of this issue, nor any basis to conclude the district court's well-reasoned decision constitutes an abuse of discretion.

## III. The district court correctly determined that individual inquiries regarding choice of law will predominate.

Plaintiff also disagrees with the district court's conclusion that individual choice of law issues will predominate, but the Petition fails to identify anything questionable about this conclusion or explain why appellate review will help resolve any important, unsettled legal issues.

Applying settled law from within this Circuit, the district court noted that it required a rigorous analysis of variations in state law to determine whether those variations "swamp any common issues." Order at 18. Plaintiff made a strategic decision not to conduct such an analysis, incorrectly assuming Massachusetts law would apply because the district

court had applied it in prior orders regarding the claims of plaintiffs who reside in Massachusetts. Even after Responding Defendants raised the choice of law problems in their Opposition, Plaintiff still chose not to meaningfully conduct the required analysis on reply. The district court thus concluded that Plaintiff failed to carry his burden as the moving party. Order at 19-20.

The Petition rehashes the claim that Massachusetts law would apply across the class because that issue was already decided, but the Order rejected this same argument. And for good reason. Plaintiff cites the 2022 order on several defendants' motions to dismiss, in which the court determined Massachusetts law applied to the claim against one defendant. *In re TelexFree Sec. Litig.*, 626 F. Supp. 3d 253, 288 (D. Mass. 2022). As the district court explained—in a statement that holds true for the Petition—Plaintiff "misunderstands" this ruling and "misconstrues the necessary choice of law inquiry." Order at 17.

When the district court issued that 2022 ruling, there were only two named plaintiffs, both residing in Massachusetts. *See id.*; Petition Ex. 6

(5th Consolidated Amended Complaint).[5] At the class certification stage, by contrast, Plaintiff is seeking to adjudicate nearly 500,000 claims on behalf of participants from around the world.[6] Petition Ex. 13 at 10 & n.5. As the district court recognized, the order on which Plaintiff relies simply does not answer the salient question: which choice of law rules and which substantive state or foreign laws will apply to the various putative class members, most of whom lack any connection to Massachusetts? *See* Order at 17-18.

Plaintiff's insistence that he believed Massachusetts law applied to all claims is also inconsistent with previous orders applying the law of other states. *See, e.g., Cellucci v. Foster Garvey*, No. 4:23-10304-TSH, 2023 WL 4627982 (D. Mass July 19, 2023) (applying Washington law). In fact, one of the orders Plaintiff cites as an example of the application of Massachusetts law in fact concluded that Oregon had the "the most

---

[5] Plaintiff cites several other orders that purportedly support the conclusion that Massachusetts law applies. Petition at 21 & n.45. At the time each of those orders issued, the only named plaintiffs were Massachusetts residents. *See* Dkts. 121, 141, 503 & 1186. Those orders did not decide which law applied to the claims of absent class members.

[6] Plaintiff's motion sought certification of a worldwide class despite the fact that every complaint he filed limited the class definition to U.S. residents. Opposition at 22.

significant relationship, and thus, its law should be applied." *See* Petition at 21 n.45 (citing 2021 U.S. Dist. LEXIS 232681 (Dec. 6, 2021)). Plaintiff's argument that the district court was bound to apply Massachusetts law based on prior orders is therefore illogical and inaccurate.[7]

Having ignored the issue in the district court, Plaintiff now attempts to conduct the required choice of law analysis in the Petition, but it is too little, too late. *See Caruso v. Delta Air Lines, Inc.*, 113 F.4th 56, 77 (1st Cir. 2024) (arguments not made in the district court are waived). Plaintiff argues there is no conflict among the aiding and abetting laws of Florida, Georgia, New York, Arizona, and Washington, Petition at 22-23, but that is not the full universe of laws that likely apply. The putative class members hail not just from numerous additional states throughout the country, but numerous countries throughout the world. Even if Massachusetts choice of law rules applied to all claims, applying the facts of a participant's claims under the most

---

[7] Wells Fargo also repeatedly forecasted its intent to raise choice of law issues at class certification. *See, e.g.*, Memorandum of Wells Fargo Advisors, LLC in Support of Second Motion to Compel, Dkt. 966, at 10 ("In determining whether to certify a class, a court must also consider whether the claims of the putative class members are governed by the laws of different states.").

significant relationship test may result in the application of the law of many other states (or countries). *See* Opposition at 13 (citing cases). Plaintiff does not even attempt to identify all the substantive laws that might apply, let alone analyze whether they conflict. Moreover, Responding Defendants have already shown that there are substantial conflicts precluding class certification. *See* Dkt. 2197-2 at Appx_557-60 (summarizing state-law conflicts).

In sum, the district court's decision on predominance and choice of law was not an abuse of discretion, and immediate appeal of this issue would do nothing to advance the law in this area.

## IV. <u>Granting the petition would serve no purpose because multiple, independent grounds support the denial of class certification.</u>

"The seminal opinion dealing with the standards applicable to Rule 23(f) applications is [*Blair*]. That cogently reasoned opinion captures the essential principles on which Rule 23(f) rests." *Mowbray*, 208 F.3d at 293. As the Seventh Circuit explained in *Blair*, "[h]owever dramatic the effect of the grant or denial of class status in undercutting the plaintiff's claim or inducing the defendant to capitulate, if the ruling is impervious to revision there's no point to an interlocutory appeal." 181 F.3d at 835. In

other words, there is nothing to be gained by granting a petition that would not change the result or provide important guidance in future cases.

The Petition challenges only two of the district court's conclusions: that individual damages and choice of law issues predominate. But the Order also addressed Rule 23's ascertainability requirement and concluded there is no way to identify who owned many TelexFree accounts. Order at 11-14. The Petition makes no mention of this issue, which is also fatal to certification.

As the Responding Defendants explained, this case presents numerous ascertainability problems. *See* Opposition at 2-8 (discussing accounts owned by Mickey Mouse and Albert Einstein, gibberish entries, accounts owned by teams or companies, and other problems). The Order focused on Plaintiff's inability to identify who owned specific accounts in TelexFree. Participants often owned multiple accounts, sometimes under a variety of usernames, and TelexFree's SIG database provides no way to identify and link all user accounts belonging to a particular participant. *See* Order at 13 (analyzing the facts and Judge Woodlock's decision in *Iatrou* and concluding that, "even though the net gains versus net losses

of *user accounts* is ascertainable, the identity of who owns those accounts is not").[8] Given Plaintiff's inability to satisfy the independent Rule 23 requirement of ascertainability, and his failure to address this issue in the Petition, an interlocutory appeal would be futile.

The district court also could have denied class certification on several independent grounds that it did not even need to reach. These include: the fact that Plaintiff attempted to assert claims on behalf of international participants that expired long ago, Opposition at 14-15; the need for individual determinations of whether participants reasonably relied on varying representations about TelexFree, *id.* at 15-24; evidence that some participants were aware of and assumed the risks in hopes of profiting from the scheme, *id.* at 24-29; and complex causation issues arising from Plaintiff's efforts to certify a class containing members with no conceivable connection to defendants like Wells Fargo, ProPay,

---

[8] The court described Plaintiff's attempt to avoid ascertainability issues with a class definition that excludes triangular transactions as a "definitional maneuver" that only served to kick the can down the road, creating new problems in calculating damages. Order at 14. For example, defining "net gains" and "net losses" to exclude cash transactions between participants would attribute losses to participants who actually received large amounts of cash, including promoters that the SEC sued for securities fraud. *See* Opposition at 36.

Cardenas, or Montalvo given the timing or method of their participation, *id.* at 29-32.

It is clear that granting the Petition would only delay the inevitable, further protracting this decade-long litigation with an appeal that would assuredly result in the affirmance of the district court's well-reasoned denial of class certification.

## CONCLUSION

Plaintiff's Rule 23(f) petition for leave to appeal should be denied because it does not meet the Court's requirements for interlocutory review of a class certification ruling.

Dated:     May 2, 2025          Respectfully submitted,

/s/ Adam K. Doerr
Adam Doerr (First Circuit Bar No.
    1216846)
Fitz E. Barringer
Demi L. Bostian
Patrick H. Hill
Emma T. Kutteh

**Robinson, Bradshaw & Hinson, P.A.**
600 S. Tryon St., Ste. 2300
Charlotte, North Carolina 28202
(704) 377-2536
adoerr@robinsonbradshaw.com
fbarringer@robinsonbradshaw.com
dbostian@robinsonbradshaw.com
phill@robinsonbradshaw.com
ekutteh@robinsonbradshaw.com

John O. Mirick (First Circuit Bar
    No. 15741)
**Mirick, O'Connell,
DeMallie & Lougee, LLP**
100 Front Street
Worcester, MA 01608
(508) 791-8500
jmirick@mirickoconnell.com

*Attorneys for Defendants Wells Fargo
Bank and Wells Fargo Advisors*

/s/ J. Andrew Pratt (with permission)
J. Andrew Pratt
David L. Balser
Phyllis B. Sumner
Charles G. Spalding, Jr.
Alexandra H. Titus

**King & Spalding LLP**
1180 Peachtree Street, N.E.
Atlanta, Georgia 30309
(404) 572-4799
apratt@kslaw.com
dbalser@kslaw.com
psumner@kslaw.com
cspalding@kslaw.com
atitus@kslaw.com

Douglas S. Brooks (First Circuit Bar
    No. 68296)
**Libby Hoopes Brooks, P.C.**
399 Boylston Street, Suite 600
Boston, Massachusetts 02116
(617) 338-9300
dbrooks@lhblaw.com

*Counsel for Defendant ProPay, Inc.*

/s/ David B. Chaffin (with permission)
David B. Chaffin (First Circuit Bar
    No. 13045)
Eric B. Hermanson (First Circuit Bar
    No. 71001)
**White and Williams LLP**
101 Arch Street, Suite 1930
Boston, MA 02110
(617) 748-5200
chaffind@whiteandwilliams.com
hermansone@whiteandwilliams.com

*Attorneys for Defendants Mauricio*
*Cardenas and Michael Montalvo*

## CERTIFICATE OF COMPLIANCE

1.      This Opposition complies with the length limit of Fed. R. App. P. 5(c)(1). Excluding the parts of the Answer exempted by Fed. R. App. P. 5(b)(1)(E) and Fed. R. App. P. 32(f), this document contains 5,153 words.

2.      This Opposition complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in Century Schoolbook, 14 point.

Dated:  May 2, 2025

/s/ Adam K. Doerr
Adam K.  Doerr

## CERTIFICATE OF SERVICE

I hereby certify that on May 2, 2025, I caused the foregoing to be served via electronic mail on all counsel of record.

This 2nd day of May, 2025.

/s/ Adam K. Doerr
Adam K. Doerr

ROBINSON
BRADSHAW

ADoerr@robinsonbradshaw.com
704.377.8114 : Direct Phone

May 2, 2025

**VIA HAND-DELIVERY**

Clerk of Court
U.S. Court of Appeals for the First Circuit
John Joseph Moakley U.S. Courthouse
1 Courthouse Way, Suite 2500
Boston, MA 02210
Attn: Mr. Gerry Claude

Re:     In re: TelexFree Securities Litigation, No. 25-8011 (on appeal from the U.S. District
        Court for the District of Massachusetts, No. 14-md-02566-NMG); Defendants-
        Respondents' Answer in Opposition to Plaintiff-Petitioner's Rule 23(f) Petition

Dear Mr. Claude:

I enclose herewith for filing a copy of the Answer in Opposition by Defendants-Respondents
Wells Fargo Bank, Wells Fargo Advisors, ProPay, Mauricio Cardenas, and Michael Montalvo to
Plaintiff-Petitioner Anthony Cellucci's Rule 23(f) Petition (the "Answer") in the above-referenced
matter. Per your phone conversation today with counsel for Messrs. Cardenas and Montalvo,
we are providing this hard copy of the Answer via hand-delivery because the above-referenced
case is not yet available on the Court's CM/ECF system for electronic filing. We understand that
the Clerk's Office will file this Answer on the electronic docket once the case is available in
CM/ECF.

Thank you for your attention to this matter. Please contact me if you require further information
regarding this filing.

Sincerely,

ROBINSON, BRADSHAW & HINSON, P.A.

Adam K. Doerr

Enclosure